IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


TINA MORGAN                                                                                          PLAINTIFF

     v.     Civil No. 6:12-cv-06098

SHERIFF PRESTON GLEN, Pike
County, Arkansas; JAILER KENNY
WHITE; and JAILER PAUL COWART                                                   DEFENDANTS


### MEMORANDUM OPINION

  This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. The case is before me pursuant to the consent of the parties (ECF No. 14).

  Plaintiff is currently incarcerated in the McPherson Unit of the Arkansas Department of Correction. The events at issue in this case occurred while Plaintiff was detained in the Pike County Detention Center (PCDC). Plaintiff maintains her constitutional rights were violated when she was sexually harassed and coerced into exposing herself to male inmates and male jailers.

  The case is presently before me on a motion for summary judgment filed by the Defendants (ECF No. 18). Plaintiff has responded to the motion (ECF No. 24). The motion is now ready for decision.

### 1. Background

  Plaintiff was arrested and booked into the PCDC on December 27, 2009. *Plaintiff's Response* (Doc. 24)(hereinafter *Resp.*) at ¶ 1. She remained incarcerated there until August 16, 2010. *Id.* at ¶ 2.

In January or February of 2010, Plaintiff states she told Sheriff Glenn that the 309[1] inmates were coming into the female pod to engage in sexual relations with the female inmates. *Resp.* at ¶ 5(A). The 309's did have certain duties in the female pod such as fixing problems with the showers. *Id.* at ¶ 10(H). Plaintiff indicates they would use this as an excuse to gain access to the female pod. *Id.*

The 309's would give female inmates cookies and ice cream in exchange for exposing themselves. *Id.* at ¶ 9(A). According to Plaintiff, they were poorly fed and she exposed herself return for cookies and ice cream. *Id.* at ¶ 9(B). In response to her complaints, she alleges Sheriff Glenn put no safe guards in place and did not make any changes in the policies or procedures used. *Id.* at ¶ 5(B).

In February or March of 2010, Plaintiff states she had a second conversation with Sheriff Glenn concerning the forced sexual activity occurring. *Resp.* at ¶ 6(D). Plaintiff states another inmate, Brittany Bailey-Doss, also complained about this activity. *Id.* Plaintiff has provided the Court with Doss' affidavit. *Resp. Ex.* B. In it she states that on or about January 15, 2010, she informed Sheriff Glenn about the sexual activity going on between the inmates and the 309's. *Id.*

After this conversation, Plaintiff states that Sheriff Glenn told the jailers not to allow 309 inmates to be in the control booth unless a jailer was present. *Id.* at 6(E). According to Plaintiff, this did not stop the 309 inmates from coming into the female pod for the purpose of having sexual relations. *Resp.* at ¶ 6(G). She indicates that "[a]t that point the jailer on duty in the control booth would open the door to the female pod since the 309's weren't allowed in the control booth." *Id.* at

---

[1] Act 309 of 1983, as amended, is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates. The inmates may be used for work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee.

¶ 6(G). Prior to this order, Plaintiff maintains the jailers played more of a secondary part--behind the scenes so to speak. *Id.* at ¶ 7. After this order, she states that the jailers became more vocal and visible. *Id.*

Plaintiff indicates the 309 inmates first starting coming into the female pod to have sexual relations as early as December of 2009. *Resp.* at ¶ 6(A). Plaintiff was asked what types of sexual activities she engaged in. She asserts that she was ordered on a day-to-day basis to perform sexual acts by the officers for the inmates. *Id.* She responded that "[t]here was never sexual penetration" but she "was ordered to perform lewd sexual acts including masturbation for the jailers and 309's sexual gratification." *Id.* at ¶ 6(B) & 6(H).

In June of 2010, Plaintiff states she made a calendar to start recording some dates. *Resp.* at ¶ 6(C). Plaintiff believes the 309's stopped coming into the pod around June of 2010. *Id.* at ¶ 6(D).

On July 30, 2010,[2] Plaintiff states she told transport officers Chris and Narron that the 309 inmates were having sexual relations with female inmates and that Jailers White and Cowart were asking female inmates to expose themselves. *Resp.* at ¶ 12(A). In response, Chris called Sheriff Glenn. *Id.* at ¶ 12(B). Sheriff Glenn indicated that Plaintiff was just trying to cause trouble in the jail. *Id.* at ¶ 12(C). Plaintiff revealed that she had gathered proof. *Id.* at ¶ 12(D). Specifically, Plaintiff states she started to keep a calendar and collected semen from two separate inmates. *Id.* at ¶ 12(E).

Plaintiff indicates she also reported the activities to her public defender. *Id.* Plaintiff states that her public defender told her to be quiet about the situation or it would make her time harder. *Id.* at ¶ 12(F). Plaintiff indicates she expressly told her public defender that the sexual interaction

---

[2] Plaintiff in one place refers to this date as June 30, 2010. *See Resp.* at ¶ 12(A).

was against her will and that other female inmates were involved. *Id.* at ¶ 12(G).

With respect to Defendant Kenny White, Plaintiff indicates he was the supervisor of his shift and "developed a signal for us girls to know it was time to perform sexual acts. White would use a flashlight and if we didn't perform ice cream, cigarettes and food would be withheld as punishment." *Resp.* at ¶ 8(A). She indicates White would give her a "direct order to get out of bed and show him something." *Id.* at ¶ 8(B). She indicates White would give her very detailed instructions including asking her to "penetrate her vagina with [her] fingers." *Id.* at ¶ 8(C). When White wanted a "close up," he would come to the door and "make [her] expose [her] breast or describe how he wanted to perform oral sex on [her]. *Id.* at ¶ 8(D). She would see that he had an erection. *Id.*

To her knowledge, Plaintiff was the only inmate White asked to expose herself to him. *Resp.* at ¶ 8(F). Plaintiff asserts that if she did not do what White asked he would keep bugging her until she felt she had no choice. *Id.* at ¶ 8(G). She felt coerced because she was threatened with being locked down, and with food, cigarettes, and ice cream being withheld. *Id.* She also indicates he mentally abused her. *Id.* Plaintiff asserts that other inmates including Faith Pounds, Dawn Loveday, Victoria Cogburn, and Courtney Phillips heard White making these demand. *Id.* Jailer Paul Cowart was on duty at the same time as White. *Id.* White's conduct continued from March or April of 2010 until June of 2010. *Id.* at ¶ 9(A).

With respect to Cowart, Plaintiff states he would "use the flashlight command to let us girls know it was time to perform." *Resp.* at ¶ 10(A). If she didn't respond to the flashlight, Plaintiff indicates he would verbally order her to expose either her breast or her vagina. *Id.* at ¶¶ 10(B), 10(C) 10(G). He would also escort the 309's to the pod for the purpose of engaging in sexual acts. *Id.* at

¶ 10(A). On one occasion, Plaintiff states he wanted her to get in the shower with Charles Williams but she refused. *Id.* She was then ordered to masturbate on her bed while Williams did the same in the shower. *Id.* According to Plaintiff, Cowart watched the entire time. *Id.* Cowart's conduct continued from March or April of 2010 through June of 2010. *Id.* at ¶ 10(E).

Other inmates including Pounds, Cogburn, Loveday, and Phillips were also asked to expose themselves to Cowart. *Resp.* at ¶ 10(F). Plaintiff asserts that Cowart never threatened her but he would coerce her with the promise of food or cigarettes. *Id.* at ¶ 10(J). There were times she performed and then he would not deliver the promised items. *Id.* She believes he was retaliating against her when he withheld the food or cigarettes. *Id.* at ¶ 10(K). There was never any physical contact between Cowart and the Plaintiff. *Id.* at ¶ 10(L).

On April 13, 2010, Jailer Sherry Gosney submitted an incident report. *Defts' Ex.* C. She indicated that when she walked into the control room she could see into the female cell and Plaintiff and Pounds had their t-shirts up and were squeezing their breasts. *Id.*. Cowart was sitting facing them. *Id.*

When Gosney asked what Plaintiff was doing, Cowart told Plaintiff that she needed to quit. *Resp.* at ¶ 14(C). This was the only occasion that a female jailer witnessed Plaintiff exposing herself. *Id.* at ¶ 14(D).

One other male jailer, Randy Abbot, witnessed some of this conduct. *Resp.* at ¶ 14(F). Plaintiff maintains that Abbot took pictures with his camera phone. *Id.* Plaintiff has attached as an exhibit a statement made by White. *Resp. at Ex.* G. White says he witnessed Plaintiff and Doss engaged in various sexual acts over a period of time. *Id.*

Starting in August of 2010, Bill Terry, the staff member supervising the 309 inmates,

investigated the incidents going on between 309 inmates, the jailers, and female inmates.  *Resp.* at ¶ 11(A).  The investigation was the result of complaints made by the Plaintiff and Pounds.  *Id.* at ¶ 11(B).  The same day the investigation began, Plaintiff states Cowart resigned.  *Id.* at ¶ 11(C).  Plaintiff indicates that White was relocated to another area of the jail.  *Id.* at ¶ 11(E).

On August 25th, Plaintiff states Terry's report was published.  *Resp.* at ¶ 11(D).  Plaintiff states that she has been unable to obtain Terry's investigative report but did see a newspaper article about it.  *Id.* at ¶ 11(F).  Plaintiff states the 309 program was suspended and she was transferred to another detention center.  *Id.*

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621,

625 (8th Cir. 1985)).

### 3.  Arguments of the Parties

Defendants have moved for summary judgment on two grounds.  First, with respect to the official capacity claims, they contend there is no legal basis on which Pike County can be held liable.  Second, Defendants maintain that Plaintiff voluntarily engaged in the conduct without physical contact or coercion from the Defendants.

Plaintiff in contrast maintains that no inmate should be sexually harassed or sexually abused.  As to Pike County's liability, she states the conduct was reported to the Sheriff who chose to take no measures to avoid a reoccurrence of the behavior at issue.  Instead, she states he sent a clear message that "this behavior was not only tolerated but was the normal protocol for officers."

### 4.  Discussion

The Eighth Amendment proscribes the infliction of "cruel and unusual punishments."  "The Supreme Court counsels that this amendment imposes upon prison officials the duty to provide humane conditions of confinement."  *Webb v. Lawrence County*, 144 F.3d 1121, 1135 (8th Cir. 1998).  This duty includes a requirement that prison officials "take reasonable measures to protect prisoners."  *Id.*

"[T]he sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of 'pain' forbidden by the Eighth Amendment."  *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997); *see also Chao v. Ballista*, 806 F. Supp. 2d 358, 374 (D. Mass. 2011)( "It is well established that sexual abuse by a prison guard may give rise to an Eighth Amendment claim.  Sexual abuse is simply not a

legitimate part of an inmate's punishment for her crime")(internal quotation marks and citations omitted).  The circumstances of the case determine whether or not the sexual abuse constitutes the unnecessary and wanton infliction of pain.

Even voluntary sex may rise to the level so as to constitute a violation of the Eighth Amendment.  *Chao*, 806 F. Supp. 2d at 374.  "A sexual relationship between an inmate and a guard may rise to the level of harm required for an Eighth Amendment claim.  Sex and coercive relationships are complicated and the level of harm--or lack thereof--will depend on the facts of a given case."  *Id.* (internal quotation marks and citation omitted).

"To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind."  *Freitas*, 109 F.3d at 1338.

Defendants characterization of the conduct, if it occurred, as welcome and voluntary sexual interactions that do not violate the Eighth Amendment is disingenuous at best.  There are clearly issues of fact in this case as to whether the encounters were welcome and voluntary and therefore did not constitute pain within the meaning of the Eighth Amendment.  *Freitas*, 109 F.3d at 1339 ("at the very least, welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment"). Defendants summary judgment motion is not supported by any affidavits, no information is provided regarding the investigation into the conduct of the 309 inmates, or any investigation into the conduct of White and Cowart.  Additionally, they do not dispute Plaintiff's statements that she, and at least one other inmate, made Sheriff Glenn and other officials aware of the conduct.  As noted above, Plaintiff

maintains this conduct occurred multiple times over a period of several months.

### 5.  Conclusion

For the reasons stated, the motion for summary judgment (Doc. 18) is denied.

DATED this 6th day of February 2014.

                    /s/ Barry A. Bryant
                    HON. BARRY A. BRYANT
                    UNITED STATES MAGISTRATE JUDGE